IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CYNTHIA MARIE HERNANDEZ, | § § | |
| *Plaintiff,* | § § § | SA-22-CV-01013-ESC |
| vs. | § § § | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | § § § § § | |
| *Defendant.* | § § | |

**ORDER**

This order concerns Plaintiff's request for review of the administrative denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II. 42 U.S.C. §§ 405(g), 1383(c)(3). On March 23, 2023, the parties appeared through counsel before the Court for oral argument on the issues raised in this case. Plaintiff argues that the ALJ erred in failing to properly evaluate Plaintiff's symptoms of pain and assessing her with a residual functional capacity ("RFC") without any non-exertional limitations. Plaintiff asserts that she has severe impairments of degenerative changes in her neck, back, and shoulders, along with shoulder impingement syndrome, and substantial evidence does not support the finding of the administrative law judge ("ALJ") that she can perform the full range of sedentary work.

After considering Plaintiff's Opening Brief [#14], Defendant's Brief in Support of the Commissioner's Decision [#15], the transcript ("Tr.") of the SSA proceedings [#9], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that that no reversible legal error was committed during the proceedings, and

substantial evidence supports the Commissioner's decision finding Plaintiff not disabled. The Court will therefore affirm the opinion of the Commissioner.

## I. Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#13].

## II. Legal Standards

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III.  Factual Background

Plaintiff Cynthia Marie Hernandez filed her application for DIB on July 29, 2020, alleging disability beginning July 10, 2020. (Tr. 296.) At the time of her DIB application, Plaintiff was a 60-year-old high school graduate with past relevant work as an accounts payable clerk, a job that required a full day seated at the computer. (Tr. 251, 272, 304, 402, 423.) Plaintiff had performed this position for over 35 years. (Tr. 434.) The related medical conditions upon which Plaintiff based her initial DIB application are degenerative disc spine disease, autoimmune disease, arthritis, total knee replacements, hypothyroidism, torn tendons on ankles, and high blood pressure. (Tr. 422.) Plaintiff's applications were denied initially on September 21, 2020, and again upon reconsideration on January 11, 2021. (Tr. 272–92.)

Following the denial of her claim, Plaintiff requested an administrative hearing. Plaintiff, her attorney, and a vocational expert attended the administrative hearing before Administrative Law Judge ("ALJ") Bernard J. McKay on September 2, 2021. (Tr. 244–71.) Plaintiff and the

vocational expert provided testimony at the hearing.  (*Id.*)  At the time of the hearing, Plaintiff was 61 years old, meaning at all times relevant to the ALJ's adjudication, Plaintiff was an individual "closely approaching retirement age."  (Tr. 248.)  At the hearing, Plaintiff's attorney described Plaintiff's primary impairments as degeneration in her lumbar spine, cervical spondylosis, and bilateral hand osteoarthritis.  (Tr. 247–50.)  Plaintiff's attorney also discussed Plaintiff's significant limitations to the use of her hands, as well as her lumbar and cervical spine, and noted her history of bilateral knee replacement prior to the disability onset date.  (Tr. 248–49.)

Plaintiff herself testified at the ALJ's hearing that, although she stopped working in July 2020 because her position was eliminated, her pain was intensifying in the period leading up to the elimination due to the demand on her neck, shoulders, arms, and hands sitting for sometimes as long as 12 hours at a computer.  (Tr. 251.)  Her prior employer had accommodated her by providing her with a sit-stand desk and an ergonomic chair, as well as the option of working from home, due to her pain.  (Tr. 258.)  For this reason, she decided not to look for replacement full-time work after she was laid off.  (Tr. 252.)  When asked by the ALJ about the biggest physical issue keeping her from going back to work, Plaintiff testified to it being the use of her hands.  (Tr. 252.)  Plaintiff quantified the daily pain in her hands as an 8 out of 10 and described the difficulties she faces lifting and holding even a half-gallon of milk.  (Tr. 252–53.)  Plaintiff also testified that she can only sit upright for about 15 minutes before she needs to adjust herself, move, or stand and can only stand for 15 to 20 minutes before needing to sit down due to low back pain.  (Tr. 254, 2588.)

The ALJ issued an unfavorable decision on November 1, 2021.  (Tr. 296–305.)  The ALJ found that Plaintiff met the insured-status requirements of the SSA and applied the five-step

sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 10, 2020, the alleged disability onset date. (Tr. 298.) At step two, the ALJ found Plaintiff to have the following severe impairments: cervical and lumbar degenerative disc disease, lumbar spinal stenosis, shoulder impingement syndrome, and degenerative changes of the bilateral shoulders. (Tr. 298.) The ALJ found Plaintiff's impairments of arthritis, obesity, diabetes, and other conditions to be non-severe. (Tr. 299.) The ALJ reasoned that although imaging revealed degenerative changes of the hands, fingers, and right wrist, there was no evidence of synovitis (joint swelling) at the hands, wrists, knees, or ankles; the wrists had good flexion and extension without pain on the range of motion; and there was no significant tenderness in the hand joints. (Tr. 299.)

At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled. (Tr. 300.) Before reaching step four of the analysis, the ALJ found Plaintiff retains the residual functional capacity ("RFC") to perform the full range of sedentary work with no non-exertional limitations. (Tr. 300–05.) At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as an accounts payable clerk. (Tr. 304–05.) Accordingly, the ALJ determined that Plaintiff is not disabled for purposes of the Act, and therefore not entitled to receive DIB. (Tr. 304–05.) Plaintiff requested review of the ALJ's decision, and after reviewing additional evidence submitted by Plaintiff, the Appeals Council denied review on July 20, 2022. (Tr. 1–11.) On September 15, 2022, Plaintiff filed the instant case, seeking review of the administrative determination.

## IV.  Analysis

Plaintiff raises one point of error in this appeal: that the ALJ erred in failing to properly evaluate her symptoms of pain and, as a result, in assessing her with an RFC for the full range of sedentary work without any non-exertional limitations.  This argument is not persuasive.

An RFC determination is the most an individual can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe.  *Id.* at § 404.1545(a)(1)–(3).  The relative weight given to the evidence contained in the record is within the ALJ's discretion.  *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam).  To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).  Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference."  *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

The Regulations provide that when making a disability determination, the adjudicator must consider subjective symptoms, including pain, and the extent to which those symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a).  The ALJ is required to follow a two-step "objective-subjective" process in evaluating the claimant's subjective evidence and the applicant's credibility if a credibility determination is necessary.  *See Salgado v. Astrue*, 271 Fed. App'x 456, 458 (5th Cir. 2008) (per curiam).

At step one, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *See* Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2016 WL 1119029, at *3 (S.S.A. Mar. 16, 2016). At step two, the ALJ evaluates the intensity and persistence of an individual's symptoms such as pain and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* at *4. In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ examines the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. *Id.* The governing regulations include several specific factors to be considered when evaluating alleged symptoms, such as pain: (1) daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

Plaintiff argues that the ALJ erred in his application of Section 404.1529 and SSR 16-3p in applying the subjective second step of the two-step process required to evaluate the extent of alleged symptoms. At step one the ALJ found there to be objective medical evidence supporting

a finding of degeneration of the lumbar and cervical spine and bilateral shoulders and shoulder impingement. (Tr. 302–03.) Yet, Plaintiff argues, the ALJ failed to build a logical bridge between this evidence and his conclusion that Plaintiff's statements about the intensity of her impairments are not entirely consistent with the medical evidence and other evidence of record. (Tr. 303.)

Again, at the ALJ's hearing, Plaintiff testified that she experiences daily pain in her hands at a level of 8 out of 10; that she struggles to hold even a half-gallon of milk; and that she can only sit upright for 15 minutes at a time before she needs to adjust her position, stand up, or move. (Tr. 252–54.) Medical records indicate that Plaintiff has complained to her treating providers of continuous achy pain to the neck and shoulders, which is aggravated by looking down, and difficulty with overhead activities. (Tr. 635, 780.) The ALJ concluded that Plaintiff's daily activities and the objective medical evidence establishes that she has a greater capacity than she alleges. (Tr. 304.) In reaching this conclusion, the ALJ properly considered the Section 404.1529 factors. Additionally, substantial evidence supports the ALJ's determination.

As to treatment and medication, the ALJ noted that Plaintiff declined to pursue pain medication, even though she reported to her physician in September 2020 that her pain was a seven or greater out of ten every day. (Tr. 301, 686–92.) Additionally, the ALJ noted that Plaintiff had seen a chiropractor and experienced a significant reduction in the persistence and intensity of her pain over the course of treatment. (Tr. 302, 686–92.) As to other factors not specified, the ALJ found the fact that Plaintiff stopped working due to a lay off, and not due to her pain, to have an adverse effect on her credibility as to the severity of her pain. (Tr. 303.) This is a factor the ALJ may consider in evaluating Plaintiff's subjective symptoms. As the ALJ noted, in a similar situation, the Fifth Circuit affirmed an ALJ's finding of no disability where

8

the claimant had previously performed his work with identical medical conditions to those he had at the time he applied for benefits but lost his job due to a layoff unrelated to his medical condition. *See Bowie v. Astrue*, 262 Fed. App'x 642, 645–46 (5th Cir. 2008). That Plaintiff performed her previous position with accommodations, such as a desk with a sit-stand option, does not preclude that work from being considered past relevant work for purposes of evaluating disability and may demonstrate the necessary skills and ability to work at the substantial gainful activity level. *See* 20 CFR 404.1573(c). And regardless, the ALJ found Plaintiff could perform her past relevant work both as actually and generally performed. (Tr. 304–05.)

As to daily activities, the ALJ noted that Plaintiff had the ability to drive, go grocery shopping, prepare meals, do household chores, use a computer, text, and sew. (Tr. 303.) Although Plaintiff points out that the ALJ's summary of Plaintiff's daily activities may overstate the frequency of Plaintiff's performance of these activities, the objective medical evidence supports the ALJ's conclusion that Plaintiff is independent on her activities of daily living. Progress notes by Plaintiff's physical therapist from April 2021 state that Plaintiff is independent with her ADLs, ambulation, and mobility, even if these activities do cause her some pain. (Tr. 765.) In summary, the Court considered the factors set forth in Section 404.1527(c) and did not commit any procedural legal error in evaluating the intensity of Plaintiff's pain symptoms and her limitations.

Additionally, the overall medical evidence in the record provides substantial evidence to support the sedentary RFC assessed by the ALJ, even though he did not include any non-exertional limitations, such as allowing Plaintiff to alternate positions throughout the day or limit her overhead reaching due to her shoulder impingement. First, the ALJ did give credit Plaintiff's testimony regarding her pain symptoms and other evidence in the record regarding her pain by

limiting her RFC to the lowest exertional level (sedentary), rejecting as non-persuasive the State Agency Medical Consultants' opinions that Plaintiff could perform at the medium exertional level. (Tr. 304.) The ALJ explained that the doctors failed to consider Plaintiff's shoulder impairments and did not have access to additional evidence received at the hearing level that Plaintiff had degenerative changes in her shoulders and spine. (Tr. 304.) Thus, the ALJ did not reject outright Plaintiff's self-described pain related to her shoulder and spine conditions in assessing her with an RFC without specific additional non-exertional limitations. Furthermore, there are normal evaluations in the record regarding Plaintiff's neck, spine, and hands, which support the ALJ's failure to include additional limitations in the RFC related to the use of Plaintiff's hands or as to overhead reaching. The ALJ cited an examination from December 2020 in which Plaintiff exhibited good flexion, extension, and rotation of the cervical spine, shoulders, elbows, and wrists, with no hand tenderness. (Tr. 637.) Additional records from late 2020 also document normal musculoskeletal examinations and 5/5 strength in all muscle groups. (Tr. 679.) Although later examinations were less favorable, Plaintiff herself conceded in her briefing that the record contains a mixture of normal and abnormal findings.

Finally, the Court rejects Plaintiff's argument that the ALJ erred in failing to consider Plaintiff's stellar work history of over 30 years of consecutive employment before her alleged disability onset date. Although the regulations direct an ALJ to consider "information about [a claimant's] prior work record," 20 C.F.R. § 404.1529(c)(3), there is no binding authority in the Fifth Circuit stating that an ALJ must specifically reference a claimant's work history in assessing credibility or fashioning an RFC. And the Fifth Circuit has expressly found that an ALJ is not required to mechanically follow every guiding regulatory factor in articulating

reasons for denying claims or weighing credibility.  *Clary v. Barnhart*, 214 Fed. App'x 479, 482 (5th Cir. 2007).  In summary, substantial evidence supports the ALJ's RFC determination.

## V.  Conclusion

Based on the foregoing, the Court finds that no reversible error was committed during these proceedings and substantial evidence supports the Commissioner's finding that Plaintiff is not disabled.  Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

SIGNED this 27th day of September, 2023.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE